# EXHIBIT 4

## Declaration of John S. Vanderbol III.

### Report in Review of Paper Records Violations.

In preparation of a Motion for Temporary Restraining Order, I was asked by Counsel Paul M. Davis to provide a simplified declaration to submit to the court. In preparation of this report, I reviewed expert witness testimony with attached documentation, original copies of state records retention policies, state reports, regulations and modifications of voting policies, as well as, news reports, witness testimony, and video recordings of the destruction of paper items mandated by law to be retained. My statements below are my declaration, made under oath and to the best of my knowledge and ability to be factual, concise and documentarily supported as correct in reflecting the conduct of the Defendants' violations of law.

### Simplified review of basic minimum requirements of Retention.

In review of violations requiring action of the court in regard to a temporary restraining order, the basics of HAVA[1] and 1960 CRA[2] are remarkably simple to understand. Further, in open-source available documentation, the Defendants' conduct is well documented, as well as flagrant in their intent to violate well-founded law. As shown in other expert's reports and evidenced within the operating manuals of the electronic voting machines which I have reviewed (See Exhibit A) there are a series of reports that are issued on 'paper' during the election process.

In review of the supporting document retention directives issued by each state, as shown in expert report spreadsheets (See

---

[1] The Help America Vote Act of 2002.
[2] 1960 Civil Rights Act

Declaration of John S. Vanderbol III:
Report in Review of Paper Records Violations.

Page 1 of 4

Exhibit B), there are as many as 20 reports issued by the electronic voting machines in each state that are not retained, nor kept for 22 months. This simple but intentional "mismanagement of data" shows a dual violation of both federal acts.

The first of a series of violations pertains to violations of HAVA sec. 101 (b)(A) which requires the "use of payments" received by the states to be used to specifically comply with "the requirements under Title III". Section 301(a)(2)(B)(i) stipulates *"The voting system shall produce a permanent paper record with a manual audit capacity"*. Functionally, there is no aspect of HAVA that relieves the states from its mandate to maintain "ALL PAPERS" that come into the possession of election officials as required in 1960 CRA Sec. 301. The processes of the states in use of the electronic voting systems are in fact inherently unlawful, as one aspect of the plans used by the Defendants purposefully created non-auditable paper trails.

For clarity, Title III of HAVA mandates a series of questions, and data collection prior to obtaining a ballot. Title III also establishes "Requirements for Voters who register by mail" that were not met in any state who used an online form for registration. Functionally, the form registrations used in "get out the vote" efforts and the form issued by the EAC itself failed to comply with 'requirements' to obtain (in compliance with HAVA) and then retain in compliance with 1960 CRA Sec 301, data and papers[3] affirming if a person registered to vote in a jurisdiction by mail AND if the person had not previously voted in a federal election[4].

---

[3] For further analysis and narrative regarding Paper Retention, Defendant's failures to preserve data, and other lawful requirements review Exhibit C

[4] See: HAVA Sec. 303 (b)(1)(B)(i) and (ii)

Declaration of John S. Vanderbol III:        Page 2 of 4
Report in Review of Paper Records Violations.

None of the voter record retention procedures / requirements in the expert witness' spreadsheet reflects this mandatory requirement!

### Clear violations of basic paper retention requirements.

CRA 1960 Sec. 301 specifically states "EVERY OFFICER OF ELECTION SHALL RETAIN AND PRESERVE" for a period of 22 months from the date of any election "ALL RECORDS AND PAPERS" "requisite to voting". In a process review, requisite would be to be "required" as an element of the voting process. No aspect of 1960 CRA 301, nor any component of HAVA Title III, allows for the substitution of papers or records in the voting process. Yet, collectively, every argument provided by the state election officials presented in court in numerous hearings falsely allege "the right" under state law to substitute records due to the electronic machine itself, a component denied in each of the manuals issued by the manufacturers themselves.

Factually, a review of the machine manuals shows a notification to "retain for 22 months" all reports of the machines in addition to the "papers" portion of the voting process itself. In the 2020 election, the separation of the paper ballot and supporting documentation from the barcoded security envelope on the surface appears to be an act of voter identification protection. However, this is a false ruse. Factually, retention of the envelope, ballot, and identification is required as part of the mail-in ballot process[5] and lawfully required in Sec. 301 of 1960 CRA for a period of 22 months. The retention is required for a manual audit trail as required in HAVA.

---

[5] As stated in HAVA Title III

Further, 1960 CRA Sec. 303 contemplates the requirement of retention of original documents as a portion of the investigation process. While 1960 CRA Sec. 304 contemplates the "safeguard" criteria of voter privacy by stating "neither the Attorney General nor any employee…shall disclose any record or paper produced pursuant to this title" including such prohibition of a record or paper to a "court or grand jury", there is no logical reason the defendants' decided to destroy papers and records other than to engage in nefarious and criminal acts.

_____
Attested by: John S. Vanderbol III
February 24th, 2020

Declaration of John S. Vanderbol III:
Report in Review of Paper Records Violations.

Page 4 of 4

# Exhibit A

# State vs. Federal Election Retention Requirements

| State | Cite Source | Loc. (etc. pg 201, para 2, line 4) | Summary |
|---|---|---|---|
| Alabama | http://lsa.state.al.us/PDF/ALI/election_hand| P. 144 Section 9.5 | The used ballots and other election supplies and records 22 months for federal elections. Uses ballot marking |
| Alaska | https://archives.alaska.gov/documents/rims/s | pg 4, item 6: Voted Ballots & Stubs for quoted in entirety--> | "The officer in charge of elections shall ensure that |
| Arizona | https://www.azleg.gov/ars/16/00625.htm | | "Election officials must retain and preserve for 22 months election record retention- As a reminder, pursuant to |
| Arkansas | https://www.sos.arkansas.gov/uploads/electi | bottom right quadrant | California Elections Code sections 17301-17306, the retention and preservation of election records, **which** |
| California | *January 8, 2020 letter from SOS Office of Voting Systems Technology Assessment | Page 5 of SOS letter | **includes digital ballot images is 22 months.** Several Record retention for federal elections is 25 months, but |
| Colorado | *Cited Source referenced in Summary--> | | |
| Connecticut | https://drive.google.com/file/d/1pqH_6twE25 | Vague or absent | |
| Delaware | https://ctstatelibrary.org/wp-content/uploads/ | Whole document | "Ballots" retention schedule is 1 year after date of |
| District of Columbia | https://archivesfiles.delaware.gov/gov-service | p. 26 | |
| Florida | https://fldoswebumbracoprod.blob.core.wind | p. 13 Items #113 & #138 | Item 113: "This record series contains records of the |
| Georgia | https://sos.ga.gov/admin/files/L GRetentionS | Pg 82-94 | |
| Hawaii | HRS 0016-0042 | | Voting machines: "No updates, patches, fixes or |
| Idaho | | | |
| Illinois | | | |
| Indiana | | | |
| Iowa | | | |
| Kansas | | | |
| Kentucky | | | |
| Louisiana | | | |
| Maine | | | |
| Maryland | | | |
| Massachusetts | | | |
| Michigan | https://www.michigan.gov/documents/sos/Document_Retention_Schedule_412493_7 | | The following items were documented as not needing the |
| Minnesota | | | |
| Mississippi | | | |
| Missouri | | | |
| Montana | | | |
| Nebraska | https://sos.nebraska.gov/sites/sos.nebraska | Pg 1-2 | "NRS 293.391  Disposition and inspection of ballots, PRESERVATION OF BALLOTS AND RELATED |
| Nevada | https://www.leg.state.nv.us/NRS/NRS-293.ht | direct link | MATERIALS Ballots, absentee ballot applications, absentee affidavits, absentee ballot lists, and challenged voter affidavits must be retained by the clerk; • For federal elections, until the contest is settled and all |
| New Hampshire | New Hampshire Election Procedure Manual | p. 109 | *NJ does not appear to have a retention schedule |
| New Jersey | County Board of Elections Retention and Disposition Schedule Requirements of Electro | | Handbook: A. Paper ballots marked by voters **and all** |
| New Mexico | 2019 Election Handbook | p. 166 | |
| New York | http://www.archives.nysed.gov/common/archives/files/mr_pub_electionschedule.pdf | | "BALLOTS (USED AND UNUSED) |
| North Carolina | County Board of Election Retention Schedul | p. 80 | "16.1-15-13. County recorder to keep ballots - Exception - |
| North Dakota | 2019-20221 North Dakota Election Laws | p. 146 | |

| State | Link | Reference | Notes |
|---|---|---|---|
| Ohio | https://www.ohiosos.gov/globalassets/elections/eoresources/general/retentionschedule.pdf | 26-3-126. Maintenance of Records. | |
| Oklahoma | Oklahoma Statutes Title 26. Elections | p. 43 | |
| Oregon | https://sos.oregon.gov/archives/Documents/recordsmgmt/sched/schedule-secretary-state.pdf | | |
| Pennsylvania | https://www.phmc.pa.gov/Archives/Records/ Pgs Election 1-6 | | Currently, Federal election records (including all records |
| Puerto Rico | | | |
| Rhode Island | https://www.sos.ri.gov/assets/downloads/doc Pg 1-9 | | "12-601.14. Election Records A. Description: Record of |
| South Carolina | General Records Retention Schedules for M p. 14 | | "12-20-31. Destruction of ballots and pollbooks—Period |
| South Dakota | Codified Laws | N/A | |
| Tennessee | https://eli.ctas.tennessee.edu/reference/county-election-commission-records-retention-s | | Elections Records Retentions ScheduleDestruction of Ten |
| Texas | | | |
| Utah | | | |
| Vermont | | | |
| Virginia | https://www.sos.wa.gov/_assets/elections/20 pg. 120 | | 4-219-330 WAC 434-219-330 Retention of election |
| Washington | | | |
| West Virginia | https://elections.wi.gov/sites/elections.wi.gov pg 229-230pg 29-33 | | Several line items allow for destruction of election related |
| Wisconsin | | | |
| Wyoming | | | |

# Exhibit B

| Name | Date Modified | Size | Kind |
|---|---|---|---|
| referendum docs by area folder | Feb 9, 2021 at 8:51 PM | -- | Folder |
| voting manuals folder | Feb 9, 2021 at 8:51 PM | -- | Folder |
| DemocracyLive_use-proc copy | Feb 9, 2021 at 8:48 PM | 6 MB | PDF Document |
| ds52remote copy | Feb 9, 2021 at 8:49 PM | 1.7 MB | PDF Document |
| ds510-use-proc-jan copy | Feb 9, 2021 at 8:45 PM | 54.7 MB | PDF Document |
| EAC Certified System by County (raw) and Pivot Table.xlsx | Feb 9, 2021 at 8:30 PM | 105 KB | Micros...k (xlsx) |
| ess-6042-proc copy | Feb 9, 2021 at 8:47 PM | 10.4 MB | PDF Document |
| fcg-afb-use-proc copy | Feb 9, 2021 at 8:50 PM | 993 KB | PDF Document |
| lac-vsap-use-proc copy | Feb 9, 2021 at 8:49 PM | 2.7 MB | PDF Document |
| polipad-users copy | Feb 9, 2021 at 8:49 PM | 10.3 MB | PDF Document |
| raybm510-use copy | Feb 9, 2021 at 8:49 PM | 1.2 MB | PDF Document |
| robis-use-proc copy | Feb 9, 2021 at 8:47 PM | 7.2 MB | PDF Document |
| userguide copy | Feb 9, 2021 at 8:45 PM | 37.7 MB | PDF Document |
| verity-31-proc copy | Feb 9, 2021 at 8:44 PM | 82.5 MB | PDF Document |
| verity-311-use-proc copy | Feb 9, 2021 at 6:43 PM | 96.9 MB | PDF Document |
| verity-procedures copy | Feb 9, 2021 at 8:44 PM | 83.5 MB | PDF Document |
| vsap20-use-proc copy | Feb 9, 2021 at 8:46 PM | 3.5 MB | PDF Document |

Sidebar:
- Applications
- Downloads
- iCloud

Locations:
- Remote 5TB
- Network

Tags:
- Microsoft Word...
- Green
- Work
- Gray
- Important

Exhibit C

## Supplemental in support of Declaration to the Court.

### Failure to preserve data and simple logic tests

On January 22, 2021, Mr. Davis, Attorney for the Plaintiffs in this matter filed a Motion for a Temporary Protective Order. I obtained a copy of the Motion and contacted Mr. Davis regarding a few of my concerns about certain points within the Motion, and complaint that are not inherently clear to any person without significant experience in data / networking systems. In preparing this report, I reviewed all of the openly available marketing and operational manuals for the electronic voting machines used by the states, and counties mentioned in this report and supporting documents. Additionally, I reviewed the referenced, and mentioned laws / conduct of states referenced in the Stanford-MIT report used to illustrate components of concern used to inform the Court. Further, I utilized my network of forensic investigators, ethical hackers, and network engineers to obtain easily discernable and understandable content from which the Court would reasonably be capable of understanding the complexities of technology mentioned in the report, and supplementals attached to this report.

In certain areas, I relied on my own personal experience in process management, combined with knowledge of governmental financial regulations, and years of experience operating highly technical communications / network operating companies. Finally, regarding deeper global financial issues, I conversed with multiple associates who would be considered experts in their field who operate companies within the global financial sector with the specific focus on current "market maker" movements which would lead to a shift in reserve currency status.

As I stated to Mr. Davis, my concerns arise from a strict reading of the language provided in the Civil Rights Act of 1960, Section 301. Further, on a process management level, I have extreme concerns for glaring failures of state election officials to comply with very specific requirements of the Help American Vote Act of 2002's section 303. Regarding HAVA, I have a procedural concern, as well as a civil rights records concern which also arises from the 1960 Civil Rights Act.

When I spoke with Mr. Davis, I addressed a concern with him regarding **Section 301 of the 1960 Civil Rights Act** which states *"Every officer of Election shall retain and preserve"* then stipulates the type of elections to include all federal offices. **Section 301** then clearly states, *"all records and papers which come into his possession"*. The act clearly stipulates all records and papers which comes into the possession of *'every officer of election'* and then mandates the retention of, and preservation of, said 'all records' for 22 months.

### "The Process Concern"

**Section 303 of the Help America Vote Act** is particularly of concern in the 2020 federal election due to the sheer number of first-time federal mail-in ballot voters. Exhibit 1[1] attached here to the authors did an excellent job of compiling information regarding the voting processes, mail-in ballot procedures, and processes used by the 'swing' states of Arizona, Florida, Michigan, North Carolina, Pennsylvania, and Wisconsin. The information is provided by the **Stanford-MIT Healthy Elections Project** [2] and upon further review, the facts presented within the report are correct relevant to this Report. The Stanford report shows the significant rise in mail-in ballots in the 2020 federal election with the largest increase being 625% increase in federal mail-in / absentee ballots compared to 2016 within the State of Wisconsin. Due to this, it is reasonable to conclude more than one million ballots in the state of which voted for the first time by mail-in a federal election. I must bring to the Court's attention according to **Section 209** of the **Help America Vote Act** *'the commission'* meaning the EAC, does not have *'any authority to issue any rule, promulgate any regulation, or take any other action'* upon a state to alter the Act, its requirements or impose any duty upon a state, or grant a relief or special exception to a state, including modifying 'minimum requirements' of **Section 304**.

---

[1] "From Tabulation to Certification: How Battleground States Count the Vote" Authors Jennifer Friedmann, J.D.'22; Toni Friedman, M.A in International Policy '21; Jesus Lazarus, J.D. '22, Albert Park, J.D. '22, Alex Stout, B.A. 22; Sydney Frankenber, M.A. in International Policy '21; Andriana Stephan, M.A. in International Policy '21; Alez Zaheer, M.A. '21  Healthy Elections. Org ;  October 30th, 2020.

[2] The project is led by Professor Nathaniel Persily, James B. McClatchy Professor Law at Stanford and former Senior Research Director of the Presidential Commission on Election Administration, and Charles Stewart III, Kenan Sahin Distinguished Professor of Political Science at MIT, Director of the MIT Election Data and Science Lab, and Co-Director of the Caltech/MIT Voting Technology Project.

The first 'process' concern is directly tied to HAVA Section 303 (b)[3] which mandates a DUTY ON THE STATE regarding "first time voters" registered by / voting by mail to obtain data which determines if the 'person' had "previously voted in an election for federal office". This duty upon the state creates a PAPER document trail that in many instances MUST accompany the ballot and pursuant to the Civil Rights Act of 1960, Sec. 301 be maintained for 22 months, with the original ballot. A careful but quick review of the Stanford-MIT Report will show this Honorable Court that all of the swing states separate ballots from 'papers' and 'envelopes' in the pre-tabulation process. Further, there is NO mention in any state procedure regarding the verification of the PAPER requirement generated in HAVA's Section 303.

The second 'process' concern is directly tied to the RETENTION of ALL papers which comes into the possession of 'election officials.' A review of the procedures in all swing states within the reports quickly shows the separation of records / papers, and items that come into the possession of election officials. It would seem even on the most minor level, disposal of the envelopes themselves would violate Sec. 301 of the Civil Rights Act. But of most concern is the discarding of ANY paper from ANY voter who submitted the required paperwork as stipulated in HAVA's section 303. It is clear that most of the states in the Stanford-MIT report view under state law, the signature verification requirement, which is insufficient for first time by mail / registered by mail / absentee voters pertaining to the federal election / federal ballot. Logically, due to Congress's use of their Constitutional authority to place regulations, as it did in the **Help America Vote Act,** these violations of federal law must also be considered violations of the Constitution pertaining to the conduct of a federal election, especially for the House of Representatives.

These are not the only 'process concerns' that I have, but these are the easiest of the process concerns to address. I must state to the Court that the vast majority of the states saw a significant rise in mail-in ballots, none of them complied with the aforementioned process issues listed. Additionally, according to the **National Conference of State Legislatures**[4] the states of Colorado, Oregon, and Washington conduct ALL of their elections by mail, and as many as *"22 states have certain provisions that allow certain elections to be conducted entirely by mail."* Of concern here

---

[3] Help America Vote Act Sec. 303 (b)(1)(B)(i)
[4] https://www.ncsl.org/research/elections-and-campaigns/all-mail-elections635457869.aspx

is cases collectively known as the "Trump / Biden" election challenges moving to the Supreme Court ALL fail to address or recognize the states of California and Nevada conducted their entire elections by mail out / mail-in ballot in 2020, and both states failed to meet the requirements of HAVA as shown above and here within.

Logically, even IF it were possible to make 'finding' in these elections' cases, neither Mr. Trump nor Mr. Biden could obtain a majority in the electoral college due to the failures to comply with federal law, and the nullity issue pertaining to the House of Representatives issues arising from the Plaintiffs' claims, and direct legal challenges for civil rights / constitutional election challenge.

### Clear Civil Rights records retention violations.

Upon review of ALL of the States' processes and machine voting systems, something became glaringly clear; each state relied 100 percent on the tabulation machine being accurate, and NONE of the states conducted a 'manual recount' unless the election results were within a less than 1% margin between candidates for office. This places a HUGE concern on several levels. First of which pertains to Attorney General Barr's December 1, 2020 comment in which he stated 'there was no widespread evidence of election fraud'[5]. Mr. Barr's commentary was frivolous and illegitimate, as no voting machine was seized and forensically audited. Further, no state conducted a manual recount[6] of the entire ballot pool, and those that did recount used the tabulation machines previously used. In short, there was NO forensic audit of the ballots themselves, only the 'paper' receipts created by the voting machines themselves! This 'system' of 'audit' would not meet any requirement of the federal government's own regulations pertaining to the Securities and Exchange Commission's purview.

The uniform standard for audit within the United States is known as Generally Accepted Accounting Practices (GAAP) which within a 'validation' process require a manual reevaluation of each element of an audit, not a cursory review of sub-tabulated columns! How can any party believe the economic and geo-political stability of the nation, and in many cases the world be less

---

[5] https://apnews.com/article/barr-no-widespread-election-fraud-b1f1488796c9a98c4b1a9061a6c7f49d
[6] Meaning "BY HAND"

acceptable than a party balancing a check book? In short, the 'no fraud' statement was made by a review of printed audit forms created by the tabulation system itself, not by a manual audit conducted by agents, or scientists. This itself is a concern, as this 'no evidence' frivolity has been over populated in the media in extremis. Which is not factually correct, there has never been a venue that reviewed 'evidence' and there was no audit from which to conclude 'no fraud'. Now in this matter, we are not concerned about the outcome of Trump/Biden, but we are concerned about the retention of actual records, an audit of facts, and the legitimacy of conduct by those who conducted the first all-electronic federal election.

Mr. Trump's legal team has presented a theory that 'machines flipped' or 'changed votes' in the Presidential election. Yet, NO machine was seized and forensically examined by any law enforcement agency. Further, no forensic exam was conducted by ANY legal team, or team's experts on the hardware itself. As shown in The Department of Computer Science Report [7] it is possible using a variety of techniques to embed hidden software / programs / application into a machines hardware which are undetectable without forensic review. Also, as shown in the forensic techniques report [8], there are a variety of 'anti-forensic' techniques that hackers / bad actors can use to conceal digital activities. As stated in the article *"Anti-forensic techniques can make a computer investigator's life difficult. From committing fraud in an organization to stealing crucial data, cybercriminals can perform a wide range of nefarious activities. In some cases, these perpetrators try to cover their tracks by deleting browser history, cache memory, and even cookies."* This 'cover their tracks' comment is most troubling as EACH company which sells election tabulation equipment details a 'wipe' of the tabulation equipment. In Georgia, the state has repeatedly been 'blasted' by judges[9] and others for 'wiping' election equipment and in 2020 Georgia once again 'wiped' their election equipment in preparation for a 'run-off' election despite two lawsuits being filed by prominent lawyers regarding election fraud[10].

---

[7] Information Hiding and Detection – Department of Computer Science and Engineering, Mississippi State University.
[8] https://blog.eccouncil.org/6-anti-forensic-techniques-that-every-cyber-investigator-dreads/
[9] https://www.yourbasin.com/news/national/judge-blasts-georgia-officials-handling-of-election-system/
[10] https://247sports.com/college/usc/board/59419/Contents/-judge-allows-ga-to-reset-wipe-dominion-voting-machines-data-155673790/

It is clear, in 1960, the Congress without forward vision of the emerging technologies could not envision the word 'records' to include electronic records, random access memory, phantom memory, or the literal 100's of ways a cybercriminal could embed information within a piece of computer hardware. However, Congress was VERY CLEAR on their intent to secure, preserve, and maintain ALL RECORDS. Clearly, anything that preserves 'data' is a record. Since the 'election machines' are still in the possession of state election officials but the states' 'wiped' the machines; this failure to maintain these electronic records held within the machines themselves for 22 months is in itself a civil rights violation for the exact reason the Congress mandated the requirement to hold records. Which was to determine IF crimes / violations of civil rights had occurred.

### Post Analysis Narrative.

The public interest issue that emanates from the Plaintiffs' legal action is graphically multiplied when viewed against the post-election conduct of the Defendants who are beneficiaries of the unlawful election. As a Veteran, I am shocked by the repeated unconstitutional conduct of the 117th House of Representatives, who obtained office by unconstitutional, and unlawful processes. I am bewildered by the brazen arrogance in impeaching a citizen of the United States without lawful right. I am deeply concerned of the calculated injuries inflicted on our nation's financial mechanisms which could cause a geo-political shift and stimulate the emergence of a new global reserve currency, the Renminbi[11]. I foresee in the not-so-distance future, the globe will not speak of the 'dollar' as a unit of currency, but will instead reference the 'yuan'. As stated in the Global Risk Report, once the world realizes the Congress and President are not legitimately seated into office, this country will no longer be a safe haven, as well are no longer a nation that abides by 'the rule of law'.

Respectfully Submitted

*[signature]*

John S. Vanderbol III

---

[11] Chinese currency also known as the "Yuan".