# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| JENNILYN SALINAS, et al., | : |
| Plaintiffs, | : Case No. 6:21-cv-00162 |
| v. | : JUDGE ALAN D. ALBRIGHT |
| NANCY PELOSI, et al, | : MAG. JUDGE JEFFREY MANSKE |
| Defendants. | : |

## MOTION TO DISMISS OF DEFENDANTS OHIO GOVERNOR MIKE DeWINE AND OHIO SECRETARY OF STATE FRANK LaROSE

Defendants Ohio Governor Mike DeWine and Ohio Secretary of State Frank LaRose (together, the "Ohio Defendants") move for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction and Eleventh Amendment immunity, Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, and Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The grounds for dismissal are set forth in the attached Memorandum in Support.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ W. Travis Garrison*
W. TRAVIS GARRISON (0076757)
CAITLYN NESTLEROTH JOHNSON (0087724)
   *Pro hac vice motion pending*
ANDREW D. MCCARTNEY (0099853)
   *Pro hac vice motion pending*
Assistant Attorneys General
Ohio Attorney General's Office
30 E. Broad Street, 14th Floor
Columbus, Ohio 43215
Tel: 614-752-4730 | Fax: 614-728-1172
Travis.Garrison@OhioAGO.gov
Caitlyn.Johnson@OhioAGO.gov
Andrew.McCartney@OhioAGO.gov

*Counsel for the Ohio Defendants*

**MEMORANDUM IN SUPPORT**

**INTRODUCTION AND BACKGROUND**

This Court should deny all of Plaintiffs' claims against the Ohio Defendants for multiple reasons. First, Plaintiffs lack standing and their claims are moot, so the Court lacks subject-matter jurisdiction over the entire case. Second, Plaintiffs' claims against the Ohio Defendants are barred by the Eleventh Amendment. Third, this Court lacks personal jurisdiction over the Ohio Defendants. Fourth, this Court should refrain from adjudicating Plaintiffs' lawsuit under the political-question doctrine. And finally, Plaintiffs fail to state any claim for which relief can be granted against the Ohio Defendants. As a result, this Court should dismiss Plaintiffs' Amended Complaint.

On January 18, 2021, Plaintiffs Latinos for Trump, Blacks for Trump, Joshua Macias, M.S., B.G., J.B., and J.J. filed a lawsuit similar to this one, requesting an injunction "to restrain all further action . . . of the 117th Congress until trial upon the merits, and, upon a verdict for the Plaintiffs, for the Court to order the 50 states to conduct a new federal election that conforms to the minimum standards of [the Help America Vote Act of 2002]." Complaint, *Latinos for Trump v. Sessions*, No. 6:21-cv-43 (W.D. Tex. Jan. 18, 2021), Doc. No. 1, ¶ 5. A little over a week later, the Court ordered the plaintiffs to explain why the Court should not dismiss the Complaint for failure to state a claim. Order to Show Cause, *Latinos for Trump v. Sessions*, No. 6:21-cv-43 (W.D. Tex. Jan. 27, 2021), Doc. No. 11 at 3.

A few weeks after the Court's Show Cause Order in *Latinos for Trump v. Sessions*, Plaintiffs filed this lawsuit.[1] Doc. No. 1. The Ohio Defendants were not served with the Original

---

[1] Plaintiffs here are not the same group of plaintiffs as in *Latinos for Trump v. Sessions*, but their pleadings are signed by the same counsel who signed the Original Complaint in the *Latinos for Trump* lawsuit. *Compare* Complaint, *Latinos for Trump v. Sessions*, No. 6:21-cv-43 (W.D. Tex.

1

Complaint in this case, but Ohio Governor Mike DeWine was served with the Amended Complaint on April 30, 2021. Plaintiffs state they are suing the Ohio Defendants in their official capacities. Doc. No. 24-3 ("Pls.' Ex. 3") at 9 (stating that each of the Ohio Defendants are sued "as an individual in his official capacity"). The only Ohio-specific allegations Plaintiffs allege against the Ohio Defendants can be found in Exhibit 5 to the Amended Complaint, which contains a list of various election-related news headlines for each of the 50 states. *See generally* Doc. No. 24-5 ("Pls.' Ex. 5"). Exhibit 5 alleges no actions taken by the Ohio Governor. *See id.* at 21–22. As to the Ohio Secretary of State, Exhibit 5 does not explain how any action allegedly taken by the Secretary of State violated Plaintiffs' federal rights. *See id.* Like *Latinos for Trump*, the Amended Complaint in this case asserts violations of the Help America Vote Act of 2002 ("HAVA"), among other alleged violations, and requests a redo of the 2020 General Election as well as monetary damages. Doc. No. 24 ("Am. Compl."), ¶¶ 1, 28.

## LAW AND ARGUMENT

**I.     This Court Lacks Subject-Matter Jurisdiction Over the Entire Lawsuit.**

   **A.     Legal Standard**

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject-matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). On a Rule 12(b)(1) motion to dismiss, "the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.*

---

Jan. 18, 2021), Doc. No. 1 at p. 54, *with* Complaint, *Bravo v. Pelosi*, No. 6:21-cv-162 (W.D. Tex. Feb. 22, 2021), Doc. No. 1 at p. 60.

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.*

    **B.**    **Plaintiffs Lack Standing.**

Article III, Section 2 of the United States Constitution limits the jurisdiction of the federal courts to resolving "cases" and "controversies." U.S. Const. art. III, § 2; *Raines v. Byrd*, 521 U.S. 811, 818, 117 S. Ct. 2312 (1997). To establish standing, Plaintiffs must establish a "triad of injury in fact, causation, and redressability." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103, 118 S. Ct. 1003 (1998). More specifically, Plaintiffs must show they have suffered injury to a legally protected interest, which injury is "fairly traceable to the challenged action and redressable by a favorable ruling." *Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 800, 135 S. Ct. 2652 (2015).

First, Plaintiffs cannot establish that they suffered an injury in fact. An injury in fact requires a plaintiff to show the "invasion of a legally protected interest"; that the injury is both "concrete and particularized"; and that the injury is "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). Most easily, Plaintiffs' alleged injuries are not cognizable because they are generalized grievances—the kind of injuries that are "plainly undifferentiated and common to all members of the public." *Lance v. Coffman*, 549 U.S. 437, 440–41, 127 S. Ct. 1194 (2007) (internal quotation marks omitted); *id.* at 442 ("The only injury plaintiffs allege is that the law—specifically the Elections Clause—has not been followed. This injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past."); *see also Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018) (holding that an alleged injury must be "distinct from a 'generally available grievance about government'" (quoting *Lance*, 549 U.S. at 439)). The injuries Plaintiffs allege—as asserted class representatives on behalf of every American—are allegedly common to

3

every citizen of every state.  But "[t]o have standing . . . a plaintiff must have more than a general interest common to all members of the public." *Lance*, 549 U.S. at 440 (internal quotation marks omitted).  Plaintiffs' asserted injuries are not injuries in fact and do not convey standing.

Second, Plaintiffs cannot establish the causation element of standing because their claimed injuries are not "fairly traceable to the challenged action" of the Ohio Defendants.  *Ariz. State Legis.*, 576 U.S. at 800.  As discussed further below, Plaintiffs' only Ohio-specific allegations in the Amended Complaint do not explain how—let alone establish that—the Ohio Governor's or Secretary of State's actions caused the alleged unauthorized election of all members of the 117th Congress and the current Administration.

Third, Plaintiffs' asserted injuries are not "redressable by a favorable ruling." *Ariz. State Legis.*, 576 U.S. at 800.  Plaintiffs demand that this Court grant them "a new, constitutional federal election."  Am. Compl. ¶ 1.  But this Court lacks the power to do so—even if such a remedy were warranted.  The principal relief Plaintiffs seek would undermine a foundational premise of our federalist system: the idea that the federal government has only those powers the Constitution gives to it.  Nothing in the Constitution empowers a federal district court to order a redo of an entire national election.  In the Federalist Papers, Alexander Hamilton stated that "there is no liberty, if the power of judging be not separated from the legislative and executive powers."  The Federalist No. 78 (Hamilton), p. 523 (Cooke, ed., 1961).  Plaintiffs here seek "an unprecedented expansion of judicial power . . . . into one of the most intensely partisan aspects of American political life." *Rucho v. Common Cause*, 139 S. Ct. 2484, 2507 (2019) (referring to partisan gerrymandering).  "That intervention would be unlimited in scope and duration—it would recur over and over again"—indeed, with every national election.  *Id.*  There is no basis for "the politically

4

unaccountable branch of the Federal Government assuming such an extraordinary and unprecedented role." *Id.* For all these reasons, Plaintiffs lack standing.

      **C.**      **This Case Is Moot—And Barred by Laches.**

This untimely action is also moot, which is yet another reason why this Court lacks subject-matter jurisdiction. *Wolcott v. Sebelius*, 635 F.3d 757, 774 (5th Cir. 2011). Plaintiffs filed their Original Complaint in this case on February 22, 2021—111 days after the 2020 General Election. *See* Doc. No. 1. Disenfranchising the more than one hundred fifty million Americans who voted for the current office-holders Plaintiffs wish to unseat would severely undermine the public's trust in the electoral system and reward Plaintiffs for their almost four-month delay. It is too late to reverse the results of the 2020 General Election, so Plaintiffs' claims are moot. *See Socialist Labor Party v. Gilligan*, 406 U.S. 583, 587–89, 92 S. Ct. 1716 (1972) (finding a challenge to an election statute moot where election had occurred and it was unlikely the issue would recur).

Relatedly, while not a jurisdictional defect like mootness, laches also bars the claims here, given Plaintiffs' nearly four-month delay in bringing this lawsuit. The defense of laches is rooted in the principle that equity does not aid those who slumber on their rights. *See United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 9, 128 S. Ct 1511 (2008) ("A constitutional claim can become time-barred just as any other claim can."). Courts commonly apply laches in election cases. *See Detroit Unity Fund v. Whitmer*, 819 F. App'x 421, 422 (6th Cir. 2020); *cf. Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) ("[A] party requesting a preliminary injunction must generally show reasonable diligence. That is as true in election law cases as elsewhere."). Ordering a new general election more than six months after the 2020 election occurred would certainly create "undue prejudice to the part[ies] against whom [Plaintiffs'] claim[s] [are] asserted." *Envtl. Def. Fund, Inc. v. Alexander*, 614 F.2d 474, 478 (5th Cir. 1980).

## II. Eleventh Amendment Immunity Bars Plaintiffs' Claims Against the Ohio Defendants.

Plaintiffs' claims against the Ohio Defendants are barred by the Eleventh Amendment. "Dismissal under Rule 12(b)(1) is appropriate if a claim is barred by state sovereign or Eleventh Amendment immunity." *Shaikh v. Tex. A&M Univ. Coll. of Med.*, 739 F. App'x 215, 217 (5th Cir. 2018) (citing *Meyers v. Texas*, 410 F.3d 236, 240–41 (5th Cir. 2005)). Eleventh Amendment immunity applies to state officials sued in their official capacities for monetary damages. *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S. Ct. 3099 (1985); *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358 (1991). The Sixth Circuit has held that the State of Ohio has not waived its Eleventh Amendment immunity, *Wolfel v. Morris*, 972 F.2d 712, 718 (6th Cir. 1992), and Congress did not abrogate Ohio's immunity when it enacted 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 338, 345, 99 S. Ct. 1139 (1979) (holding that § 1983 does not abrogate sovereign immunity). The only other exception to Eleventh Amendment immunity is found in *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441 (1908), which applies when a plaintiff seeks injunctive relief against a state official for ongoing violations of federal law. To overcome Eleventh Amendment immunity under *Ex parte Young*, a plaintiff must allege "an ongoing violation of federal law and seek relief properly characterized as prospective." *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 281, 117 S. Ct. 2028 (1997). The *Ex parte Young* exception does not apply when a plaintiff seeks relief for "a past violation of federal law." *Simmons v. Smith*, 774 F. App'x 228, 229 (5th Cir. 2019) (quoting *Papasan v. Allain*, 478 U.S. 265, 278, 106 S. Ct. 2932 (1986)).

Plaintiffs' suit against the Ohio Defendants is a suit against the State of Ohio and is thus barred by the Eleventh Amendment. Plaintiffs sued the Ohio Defendants in their official capacities. Pls' Ex. 3 at 9. The State of Ohio has not agreed to this suit, and Congress has not abrogated Ohio's immunity in this instance. Plaintiffs seek monetary damages from the Ohio

6

Defendants, including "General Damages . . . [and] Punitive Damages in an amount to be determined at the time of trial." Am. Compl. at p. 61. Plaintiffs also seek retrospective relief "in the form of a new federal election for Congress, President, and Vice President," for asserted violations of federal law that allegedly occurred leading up to, during, and immediately following the November 2020 election. *Id.* As that election is over, any relief based on that election would necessarily be based on past violations. To the extent Plaintiffs may be requesting prospective injunctive relief in the form of "forever restraining Defendants from violating Plaintiffs' constitutional rights," *id.*, as discussed further below, Plaintiffs have not alleged sufficient facts against the Ohio Defendants for this Court to infer any ongoing violation of federal law. Therefore, the Ohio Defendants are immune from suit because the Eleventh Amendment bars Plaintiffs' claims against them. Accordingly, this Court lacks jurisdiction under Fed. R. Civ. P. 12(b)(1).

### III. Plaintiffs' Complaint Must Be Dismissed for Lack of Personal Jurisdiction over the Ohio Defendants.

Plaintiffs have failed to sufficiently allege—nor can they sufficiently allege—that personal jurisdiction exists over the Ohio Defendants. On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff "bears the burden of establishing jurisdiction, but need only present *prima facie* evidence." *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 233 (5th Cir. 2016) (internal quotation marks omitted). Courts accept as true the plaintiff's uncontroverted allegations. *Id.* (internal quotation marks omitted).

Plaintiffs cannot show that the Ohio Defendants had any contact, let alone sufficient contact, with the State of Texas. Absent a federal statute that provides for more expansive personal jurisdiction, the personal jurisdiction of a federal district court is coterminous with that of a court of general jurisdiction of the state in which the district court sits. Fed. R. Civ. P. 4(k)(1). The Fifth Circuit has set forth that a federal court may exercise personal jurisdiction over a non-resident

7

defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Texas's long-arm statute "extends as far as constitutional due process allows." *Id.* Plaintiffs have not cited to a federal statute that provides for more expansive personal jurisdiction, thus this Court should proceed under the federal due process framework.

The Due Process Clause of the Fourteenth Amendment guarantees that no federal court may assume jurisdiction in personam of a non-resident defendant unless the defendant has meaningful "contacts, ties, or relations" with the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S. Ct. 154 (1945). A state may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Daimler AG v. Bauman*, 571 U.S. 117, 126, 134 S. Ct. 746 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923, 131 S. Ct. 2846 (2011)). A defendant should not "be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174 (1985).

Jurisdiction may be general or specific. A court may assert general jurisdiction over foreign parties (either sister state or foreign country) to hear any and all claims against them when their affiliations with the state are so continuous and systematic as to render them essentially at home in the foreign state. *Daimler*, 571 U.S. at 127. Specific jurisdiction is very different. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017). For a court to exercise specific jurisdiction, "the suit" must arise out of or relate to the defendant's contact with the forum. *Id.* In

8

other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum state and is therefore subject to the state's regulation. *Id.* For this reason, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the controversy that establishes jurisdiction. *Id.* In determining whether personal jurisdiction is present, a court must consider a variety of interests, but the primary concern is the burden on the defendant. *Id.*

The Fifth Circuit has consolidated the specific-jurisdiction inquiry into a three-step analysis: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). "A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *Id.*

Here, while Plaintiffs do not allege whether this Court has specific or general jurisdiction over the Ohio Defendants, *see* Am. Compl. ¶ 71, a claim for either would fail. Plaintiffs do not allege that the Ohio Defendants have continuous or systematic business contacts in Texas. Likewise, Plaintiffs make no allegations that either the Ohio Governor or the Ohio Secretary of State purposefully availed himself in Texas or purposefully directed conduct at the State of Texas that had effects on the State. Plaintiffs have not argued that their claims arise out of the Ohio Defendants' forum-related activities (likely because there are none). Finally, Plaintiffs have not, and cannot, show that jurisdiction here is reasonable, as the Ohio Defendants had no way to anticipate that they would be required to litigate a case concerning the November 2020 election in

9

the State of Texas. As a result, this Court lacks personal jurisdiction over the Ohio Defendants and should dismiss Plaintiffs' claims as they relate to those defendants.

## IV. The Political-Question Doctrine Also Warrants Dismissal of Plaintiffs' Lawsuit.

"Federal judges have no license to reallocate political power between the two major political parties, with no plausible grant of authority in the Constitution, and no legal standards to limit and direct their decisions." *Rucho*, 139 S. Ct. at 2507. "In such a case the claim is said to present a 'political question' and to be nonjusticiable—outside the courts' competence and therefore beyond the courts' jurisdiction." *Id.* at 2494. To that end, only those questions "historically viewed as capable of resolution through the judicial process" are appropriate for judicial review. *Id.* (internal quotation marks omitted). Here, there are no "judicially discoverable and manageable standards for resolving" the case. *Id.* (quoting *Baker v. Carr*, 369 U. S. 186, 217, 82 S. Ct. 691 (1962)). Thus, this Court should refrain from adjudicating Plaintiffs' lawsuit because it fails to raise any "claim[] of legal right" that is "resolvable according to legal principles." *Id.*

## V. On the Merits, Plaintiffs Fail to State Any Claim for Relief Against the Ohio Defendants.

### A. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). "To make out a plausible claim, the complaint must 'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Singh v. RadioShack Corp.*, 882 F.3d 137, 144 (5th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). "[T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

### B. Plaintiffs' § 1983 Claims Fail as a Matter of Law.

Section 1983 provides a private cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807 (1994) (internal quotation marks omitted). Therefore, to prevail on a § 1983 claim, a plaintiff "must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S. Ct. 1353 (1997).

Plaintiffs' asserted federal rights are difficult to decipher. Plaintiffs appear to allege rights under HAVA, the Civil Rights Act of 1960, and the federal Due Process and Equal Protection Clauses. None of these claims meet basic federal pleadings standards because Plaintiffs fail to explain *how* the Ohio Defendants have violated any specific federal right under these federal laws or constitutional provisions. Plaintiffs' allegations are but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which "do not suffice." *Iqbal*, 556 U.S. at 678. Federal pleadings standards require Plaintiffs to make out "plausible" claims. *Id.* But "[t]o make out a plausible claim, the complaint must 'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Singh*, 882 F.3d at 144 (quoting *Iqbal*, 556 U.S. at 678). And such factual allegations "must be 'more than an unadorned, the defendant-unlawfully-harmed-me accusation.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

While Plaintiffs list numerous constitutional violations in their Amended Complaint, they fail to connect these violations to the facts pleaded against the Ohio Defendants. The only Ohio-specific allegations Plaintiffs allege are buried in Exhibit 5 to the Amended Complaint, which contains a laundry list of various election-related news headlines for each of the 50 states. Without explaining how or why, Plaintiffs assert that this list of months-old election news shows "specific violations of HAVA." Am. Compl. ¶ 120. But none of the election news in Exhibit 5 comes close to showing that the Ohio Defendants violated any federal right of Plaintiffs. *See, e.g.*, Pls.' Ex. 5 at 21–22. Exhibit 5 lists *no* actions whatsoever taken by the Ohio Governor. *See id.* As to the Ohio Secretary of State, Plaintiffs allege principally that the Ohio Secretary of State permitted Ohio counties "to offer multiple drop-off options for returning absentee/mail-in ballots" at a single site in each county. *See id.* But Plaintiffs fail to explain how any action allegedly taken by the Secretary of State violated Plaintiffs' federal rights. *See, e.g.*, *id.* at 21 ("State appeals court says secretary of state has discretion to determine limits on absentee/mail-in ballot drop boxes[.]"). Simply put, none of the Ohio-specific actions Plaintiffs allege amount to constitutional violations. Plaintiffs' § 1983 claims consist of conclusory assertions unmoored from the law and unconnected to any specific actions of the Ohio Defendants. The claims must be dismissed.

      **C.**      **Plaintiffs' § 1985 and § 1986 Claims Fail as a Matter of Law.**

Section 1985(3) makes it illegal for two or more persons to conspire to deprive a person of "the equal protection of the laws" or "equal privileges and immunities under the laws" or to conspire to "prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice-President, or as a member of Congress of the United States." Because § 1985 addresses equal-protection concerns, it requires, as an element of the cause of action, "some racial, or perhaps otherwise class-based, invidiously

12

discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790 (1971). Additionally, a person who knows that persons are conspiring to deprive another of their civil rights in violation of § 1985, "ha[s] power to prevent or aid in preventing the commission of the same, [and] neglects or refuses so to do" may be liable under 42 U.S.C. § 1986. A § 1986 claim is dependent on the successful pleading of a § 1985 claim first. *See Hamilton v. Chaffin*, 506 F.2d 904, 914 (5th Cir. 1975).

Like their § 1983 claims, Plaintiffs' § 1985 claim consists of nothing but conclusory assertions unconnected to any specific actions of the Ohio Defendants. Plaintiffs also fail to sufficiently plead the requisite class-based animus to which they and every single citizen of the United States were allegedly subjected. As Plaintiffs failed to plead a successful § 1985 claim against the Ohio Defendants, their § 1986 claim also necessarily fails as a matter of law.

### D.   Plaintiffs' *Bivens* Claims Fail as a Matter of Law.

In *Bivens*, the Supreme Court provided a judicially-created cause of action for damages arising out of constitutional violations by federal officers, holding that "petitioner is entitled to recover money damages for any injuries he has suffered as a result of the agents' violation of the Fourth Amendment." *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 397, 91 S. Ct. 1999 (1971). The Fifth Circuit has recognized that "a *Bivens* action is analogous to an action under § 1983—the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials." *Evans v. Ball*, 168 F.3d 856, 863 n.10 (5th Cir. 1999). *Bivens* actions may only be brought against government officials acting in their individual capacities. *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999).

Plaintiffs fail to state a claim against the Ohio Defendants under *Bivens*. As an initial matter, the Ohio Defendants are *state actors* and *Bivens* claims apply only to *federal actors*. As

already discussed, Plaintiffs' claims against the Ohio Defendants are specifically for actions taken in their official capacities, and *Bivens* claims do not extend to agents acting in their official capacity. And finally, as already discussed, Plaintiffs have failed to show that the Ohio Defendants violated any of their constitutional rights. Accordingly, Plaintiffs cannot successfully state a claim against them under *Bivens*.

Based on the arguments above, Plaintiffs have failed to state a claim against the Ohio Defendants, and as a result, this Court should dismiss Plaintiffs' claims as applied to them.

## CONCLUSION

For the above reasons, Defendants Ohio Governor Mike DeWine and Ohio Secretary of State Frank LaRose respectfully request this Court to dismiss Plaintiffs' Amended Complaint.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ W. Travis Garrison*
W. TRAVIS GARRISON (0076757)
CAITLYN NESTLEROTH JOHNSON (0087724)
   *\*Pro hac vice motion pending*
ANDREW D. MCCARTNEY (0099853)
   *\*Pro hac vice motion pending*
Assistant Attorneys General
Ohio Attorney General's Office
30 E. Broad Street, 14th Floor
Columbus, Ohio 43215
Tel: 614-752-4730 | Fax: 614-728-1172
Travis.Garrison@OhioAGO.gov
Caitlyn.Johnson@OhioAGO.gov
Andrew.McCartney@OhioAGO.gov

*Counsel for the Ohio Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2021, the foregoing was filed with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties for whom counsel has entered an appearance. Parties may access this filing through the Court's system.

*/s/ W. Travis Garrison*
W. TRAVIS GARRISON (0076757)
Senior Assistant Attorney General