## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISON

| | | |
|---|---|---|
| JENNILYN SALINAS, LINDSEY NGUYEN, DEANNA LORRAINE, et al. | § § § § | |
| Plaintiffs. | § § | |
| v. | § § | CIVIL ACTION NO. 6:21-CV-162 |
| NANCY PELOSI, MITCH McCONNELL, CHUCK SCHUMER, MARK ZUCKERBERG, et al. | § § § § | |
| Defendants. | § § | JURY TRIAL REQUESTED |

## PLAINTIFFS' RESPONSE TO MOTION TO DISMISS OF DEFENDANTS GEORGIA GOVERNOR BRIAN KEMP AND GEORGIA SECRETARY OF STATE BRAD RAFFENSPERGER

COME NOW, Jennilyn Salinas, Maurice Lynnette, Lindsey Nguyen, Deanna Lorraine, "P.P.," "D.D.," "T.M.," "S.M.," and "M.L." (collectively, "Plaintiffs"), by and through their attorney, Paul M. Davis, to bring this Response to Motion to Dismiss of Defendants Ohio Governor Mike DeWine and Ohio Secretary of State Frank LaRose:

### I.
### INTRODUCTION: THE ISSUES RAISED IN THE GEORGIA DEFEDANTS' MOTION HAVE BEEN MOOTED BY THE SECOND AMENDED COMPLAINT[1]

1.     The introduction to the motion to dismiss by Defendants Governor Brian Kemp and Secretary Brad Raffensperger (collectively, the "Georgia Defendants") is a

---

[1] The Second Amended Complaint was amended "as matter of course" because Plaintiffs never served their Original Complaint on any Defendants but only served the First Amended Complaint.  Therefore, Plaintiffs are amending their complaint by right pursuant to Fed. R. Civ. P. 15(a)(1)(B), within 21 days after service of a motion under Rule 12.

perfect example of the Georgia Defendants continuing to participate in the pattern of racketeering and conspiracy described in Plaintiffs' Second Amended Complaint (Doc. No. 145) (the "Complaint").  The Georgia AG dutifully repeats the tired old talking points that anyone who dares to question the "integrity and accuracy" of the 2020 federal elections is propagating "baseless conspiracy theories," when it is clear to anyone paying attention that there were major issues with the integrity and accuracy of the 2020 federal elections, and in particular in Georgia.

2.     Most likely, the Georgia AG's Motion takes such a belittling tone because the AG does not believe Plaintiffs have the evidence against the Georgia Defendants to demonstrate their despicable actions in willfully and blatantly violating mandatory federal election law in their conduct of the federal elections in Georgia.  Instead of scoffing at Plaintiffs' claims and spending taxpayer money to tow the party line of the racketeer-influenced corrupt organizations described in the Complaint who are pulling the strings of the Georgia Defendants, the Georgia AG's office would do better by directing their efforts at investigating why Defendants Kemp and Raffensperger have so egregiously violated federal election laws designed to prevent ballot-box stuffing.

3.     Ironically, the Georgia Defendants filed their motion to dismiss only shortly before the Georgia Republican Party approved a resolution censuring Defendant Raffensperger stating he "failed to perform his duties in accordance with the laws and Constitution of the State of Georgia" with regard to the 2020 elections."[2]

---

[2] Michael Patrick Leahy, *Georgia GOP Censures Secretary of State Brad Raffensperger for 'Dereliction of His Constitutional Duty,"* Brietbart, June 7, 2021, available at www.breitbart.com.

The censure further states Raffensperger failed in his duties by "undermining the security of [Georgia] elections by allowing mass mailings of absentee applications by his office and third parties which created opportunities for fraud and overwhelmed election offices; rendering accurate signature matching nearly impossible; allowing ballot drop boxes without proper chain of custody; and ignoring sworn affidavits and disregarding evidence of voter fraud." *Id.* Of course, the Georgia AG continues to take the position that anyone who questions the integrity and accuracy of the Georgia elections is engaging in baseless conspiracy theory. Such gaslighting in the face of clear evidence of a lack of integrity and accuracy in the Georgia federal elections should have no place in federal court. As set forth in Exhibit 3 to the Complaint, the Georgia Defendants caused many violations of federal records retention law and also caused many violations of the HAVA.[3]

4.      Of course, the censure from the Georgia Republican Party is mere lip service to election integrity and will likely have no effect since, as described in the Complaint, the Republican Party has been colluding with the Democrat Party to allow the violations of federal civil rights voting laws, which form the basis of this lawsuit, for years. The Republican Party continues to play its role of acting as though it stands for election integrity when its senior leaders care more about consolidating power for the political class and lining their own pockets.

5.      As set forth in the Complaint, the Georgia Defendants accepted bribes and benefits in exchange for facilitating the ballot-box stuffing schemes as part of the

---

[3] All Capitalized terms not defined herein shall have the meaning ascribed to them in the Complaint.

nationwide ongoing pattern of racketeering and conspiracy described in the Complaint that has harmed Plaintiffs' property and businesses and is designed to deprive the American people of their civil rights.

6.     Regardless, the Second Amended Complaint moots the issues raised in the Georgia Defendants' Motion.  Personal jurisdiction is established against the Georgia Defendants by their contacts with the United States pursuant to 18 U.S.C. § 1965.  The Eleventh Amendment is inapplicable since Plaintiffs sue Defendants Kemp and Raffensperger in their personal capacities.  And finally, Plaintiffs have established Article III standing by alleging injuries in fact that are fairly traceable to the Georgia Defendants participation in the pattern of racketeering activity and conspiracy set forth in the Complaint.  Therefore, the Georgia Defendants' Motion should be dismissed as moot.

## II.
## ARGUMENT AND AUTHORITY

### A. Plaintiffs' RICO Claim Moot the Georgia Defendants' Personal Jurisdiction Arguments

7.     The Georgia Defendants' personal jurisdiction argument is moot because the Complaint sets forth how the Georgia Defendants participated in the pattern of racketeering directed by senior leaders of what is referred to as the MDPE enterprise in the Complaint.  Specifically, as set forth in the Complaint, the Georgia Defendants accepted bribes from the senior leaders of the MDPE enterprise in the form of financial support for their campaigns for reelection in exchange for their agreements to cause the procedures used in the Georgia Elections to violate the

records retention provisions of 52 U.S.C. § 20701 and the procedural requirements of HAVA.  Complaint,   Exhibit 4 to the Complaint sets forth Georgia's violations of these records retention provisions and is attached hereto for convenience as Exhibit A.

8.    Defendant Raffensperger is Georgia's chief election official and was responsible for ensuring that Georgia conducts elections according to applicable federal law.  Defendant Raffensperger had knowledge that Georgia was required to adhere to HAVA because Georgia received HAVA grant funds and funds from the Cares Act that were conditioned on Georgia's adherence to HAVA, which also contains the record retention provisions similar to 52 U.S.C. § 20701.

9.    The various requirements of HAVA are set forth in paragraph 153 of the Complaint. For example HAVA requires states who receive HAVA grants to ask voters if it is the first time they have voted in a federal election, and if so, to require a form of ID be submitted with their registration by mail and with their mail-in ballot if they vote by mail.  Georgia failed to do this. HAVA also prohibits the unattended dropboxes authorized by Defendants Kemp and Raffensperger.  Georgia committed many other violations of HAVA that resulted in the failures in election security detailed in the Georgia Senate Judiciary Committee attached hereto as Exhibit B. Further evidence can be provided upon reasonable discovery.  Defendants Kemp and Raffensperger also participated in propagating the Fraudulent Narratives as set forth in the Complaint and specifically in Exhibit 3 attached thereto.

10.     Section 1965 of RICO allows suit to be brought in a district in which a defendant, "resides, is found, has an agent, or transacts his affairs." *Ima Jean Robinson Springs v. Sec. Fin. Corp. of Tex.*, SA-11-CA-797-OG, 2011 WL 13324311, at *14–15 (W.D. Tex. Nov. 21, 2011) (citing 18 U.S.C. § 1965(a).  Defendants who participated in the racketeering scheme reside in this District, including Defendant Pete Sessions.

11.     The Court has general personal jurisdiction over the Texas residents who participated in the pattern of racketeering as alleged in the Complaint, including Defendant Beto O'Rourke, Defendant Shereen Ahmad, Governor Greg Abbott, Secretary Ruth Hughes, and all of the senators and congressman from the State of Texas.

12.     "Once jurisdiction and venue are established against one defendant under § 1965(a), § 1965(b) permits nationwide service of process on all 'other parties' when the 'ends of justice require' it." *Ima Jean*, 2011 WL 13324311, at *14.  "With respect to minimum contacts, the Fifth Circuit has held that "[w]hen a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States." *Id.* (citing *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994)).  It cannot be questioned that the Georgia Defendants have sufficient minimum contacts with the United States.

13.   Regarding due process in the exercise of personal jurisdiction, "it does not offend traditional notions of fair play and substantial justice to exercise personal jurisdiction over a defendant residing in the United States." *Id.* (citing *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 782 (N.D. Tex. 2008)).   The Georgia Defendants reside in the United States, therefore due process concerns regarding personal jurisdiction are satisfied.

14.   The ends of justice require that the Court exercise personal jurisdiction over all Defendants.  Because RICO was intended as a means to eradicate organized crime, the purpose of § 1965(b) is to allow a plaintiff to bring all defendants before the Court in a single trial.  *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1231 (10th Cir. 2006)  *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 781–82 (N.D. Tex. 2008).  RICO was modeled on antitrust legislation which provides that the "Attorney General may lay the venue in any district where he may properly serve one or more of his defendants." *Cory*, 486 F.3d at 1231.  RICO's purpose in eradicating organized crime would not be served where "some RICO violations would go unpunished whenever organized criminals operate within the same locale and cause harm in a distant state." *Id.*  "Insulating such a criminal enterprise from liability, when, for instance, the victim is unable to finance long-distance litigation, is not consistent with RICO's purpose. *Id.*, *accord Rolls-Royce*, 576 F. Supp. 2d at 781–82.

15.   Here, the U.S. Attorney General has abdicated his role in protecting the public from the pattern of the racketeering perpetrated by the directors, employees , and agents of the two Partisan Enterprises set forth in the Complaint.   The

Defendants' pattern of racketeering has resulted in a monopoly over the political industry to such an extent that the Partisan Enterprises can now almost completely ignore the will of the people since they have eliminated all safeguards against ballot-box stuffing schemes, including the audit trail to detect such schemes. Their monopoly over the political industry accomplished by their pattern of racketeering acts has further resulted in offering the people an illusory "choice" between only two candidates chosen by the Partisan Enterprises to serve the interests of the politicians and their co-conspirators, not the people. Since Plaintiffs are now doing the job that the Attorney General has failed to do, the ends of justice demand that Plaintiffs be able to bring all Defendants into one forum to bring them to justice.

16.     Because the Court has personal jurisdiction over all Defendants pursuant to 18 U.S.C. § 1965 with regard to Plaintiffs' RICO claims, the Court can exercise pendent personal jurisdiction over all defendants as to Plaintiffs remaining claims under the civil rights statutes and the *Bivens* claims. Pendent personal jurisdiction exists when a court possesses personal jurisdiction over defendants for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the remaining claims. *Rolls-Royce*, 576 F. Supp. 2d at 783 (citing *United States v. Botefuhr*, 309 F.3d 1263, 1272–73 (10th Cir. 2002).

17.     "In essence, once a district court has personal jurisdiction over a defendant for one claim, it may 'piggyback' onto that claim other claims over which it

lacks independent personal jurisdiction, provided that all claims arise from the same facts as the claim over which it has proper personal jurisdiction." *Id.* The rationale for pendent personal jurisdiction is that a defendant who already is before the court to defend the claim over which the court has proper personal jurisdiction is unlikely to be severely inconvenienced by being forced to defend another "claim whose issues are nearly identical or substantially overlap" the first claim. *Id.* "Notions of fairness to the defendant simply are not offended in this circumstance." *Id.* (citing 4A Wright & Miller, § 1069.7, at 228–29 (3d. ed. 2002).

18.     Here, the facts out of which Plaintiffs' RICO claims arise are the nearly identical or substantially overlap Plaintiffs' civil rights claims. Both arise out of the Defendants' conspiracy to deprive Plaintiffs of their right to a republican form of government and equal protection under the law with regard to voting. Defendants, by their acts of racketeering, established procedures for casting ballots in federal elections that were in gross violation of the papers and records retention requirements found in 52 U.S.C. § 20701 and HAVA in addition to the requirements of HAVA regarding identification requirements in the voter registration and mail-in voting processes. The violation of Plaintiffs' First Amendment rights set forth in the Complaint were for the purpose of protecting Defendants' criminally fraudulent scheme from detection by suppressing information exposing Defendants' scheme. Thus, the Court has pendent personal jurisdiction over Plaintiffs' claims under 42 U.S.C. §§ 1983, 1985, and 1986 against the Georgia Defendants.

**B. Plaintiffs' Second Amended Complaint Moots the Eleventh Amendment issue raised by the Georgia Defendants.**

19.     Through poorly worded pleadings Plaintiffs mistakenly gave the impression that they were suing the Georgia Defendants in their "official capacity," when they intended to sue them in their individual capacity.  This error has been corrected in the Second Amended Complaint, which moots the Eleventh Amendment issue raised by the Georgia Defendants.

20.     Under RICO, "public officials can be held individually liable for actions taken while holding public office and/or misuse of their public office." *LaFlamboy v. Landek*, 587 F. Supp. 2d 914, 937–38 (N.D. Ill. 2008).  Here, the Georgia Defendants' acts of racketeering alleged in the complaint, including their violations of 52 U.S.C. § 20701 and HAVA and acts in accepting bribes, were misuses of their public office or acts taken in their individual capacities.  The Georgia Defendants' fraudulent statements in furtherance of the racketeering scheme were committed in their individual capacities when they repeated Partisan Enterprise talking points for the purpose of fraudulently soliciting funds from donors and/or covering up the violations of federal election law.  Therefore, they are liable in their individual capacities.

21.     With regard to Plaintiffs' civil rights claims under 42 U.S.C. §§ 1983, 1985, and 1986, public officials may be sued in their individual capacities for acting under color of state law, and where they caused and/or conspired to cause deprivation of federal rights "whether they act in accordance with their authority or misuse it." *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  The Complaint alleges deprivations of civil rights by the Georgia Defendants by their actions in causing the Georgia federal elections to violate federal civil rights election laws.  Regarding Sections 1986 and

1986, the Georgia Defendants acted with class-based invidious animus, as set forth in the Complaint.  Therefore, the Georgia Defendants are liable to Plaintiffs in their individual capacities, and the Eleventh Amendment is not implicated.

### C. Article III Standing

22.     Plaintiffs have concrete injuries fairly traceable to the Georgia Defendants' actions in furtherance of the racketeering scheme and conspiracy to deprive of civil rights that can be redressed through monetary damages and injunctive relief.   Therefore, Plaintiffs have Article III standing.   *See, e.g.*, *DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 332–33 (2006)* ("The requisite elements of standing are familiar: 'A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'").

### i.   Plaintiffs have alleged injuries in fact that are not "generalized grievances about the conduct of government."

23.     Plaintiffs have alleged injuries in fact.  With regard to their RICO claims, Plaintiffs asserted they have suffered harm to their business and/or property by reason of Defendants' violations of 18 U.S.C. § 1962(c).  Defendants' pattern of racketeering used fraudulent means to obtain monies from Plaintiffs and to destroy Plaintiffs' business through false narratives that led to extended economic lockdowns that destroyed small business.

24.     With regard to their § 1983 claims, Plaintiffs have asserted impairment of reputation, personal humiliation, mental anguish and suffering damages for deprivation of their various constitutional rights.  The Supreme Court has specifically

held in the context of a § 1983 claim, compensatory damages may include "impairment of reputation, personal humiliation, and mental anguish and suffering." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986); *see also Carey v. Piphus*, 435 U.S. 247, 254 (1978) (mental and emotional distress constitute compensable injury in § 1983 cases).

25.   It should be obvious that these damages are not, as the Georgia Defendants contend, "the kind of undifferentiated, generalized grievance about the conduct of government." *Gill v. Whitford*, 138 S.Ct. 1916, 1931 (2018).  The cases the Georgia Defendants cite are gerrymandering cases, which are inapposite for the context cited.  In the gerrymandering cases, the plaintiffs assert harm based on vote dilution by means of a lawful process of redistricting, which is a generalized grievance about the conduct of government.

26.   By contrast, Plaintiffs do not complain about the lawful conduct of government but about the conduct of Defendants' unlawful racketeering acts and conspiracy to deprive of civil rights through violations of federal civil rights statutes enacted to protect Plaintiffs' voting rights.  It is not government that Plaintiffs complain of but of the corrupt, illegal means by which Defendants impose near-absolute control over who is elected to public office.  That is very different than a claim complaining of the "conduct of government" as in the cases cited by the Georgia Defendants.

27.   Moreover, the deprivations of constitutionally protected rights set forth in the Complaint have a unique effect on each individual depending on their personal

values, motivations, goals, dreams, and political ideology.  It is apparent that many left-leaning Americans are in favor of a more "collectivist" America with a more authoritarian form of government that exalts "equity" over equality of individual rights and personal responsibility through redistribution of wealth at the direction of the political class such as one would see in countries like Cuba or Venezuela. Defendants' conspiracy to deprive of a republican form of government and equal protection in voting rights would not affect these Americans in the same way as it harms Plaintiffs because the outcome of the deprivation results in a more authoritarian form of government with leftist political values that is actually *desirable* to such Americans.  For Plaintiffs, however, the deprivations have a devastating emotional effect, as described in the Complaint and the Declarations attached to the Motion for Temporary Restraining Order. **[cite]**

28.     Similarly, with regard to First Amendment rights, many left-leaning Americans approve of the deprivations of First Amendment rights set forth in the Complaint because Defendants' actions result in silencing those who seek to express more conservative political views. So also, these Americans will not experience similar mental anguish and suffering in addition to reputational harm and humiliation that free speech censorship has inflicted on Plaintiffs.

**ii. Plaintiffs injuries are fairly traceable to the acts of the Georgia Defendants.**

29.     The Georgia Defendants' acts in furtherance of the pattern of racketeering made Defendants' racketeering scheme possible.  If only the Defendants who reside in Texas had participated in the racketeering scheme, the scheme would

not have been successful in establishing the corrupt political monopoly that caused the harm to Plaintiffs' property and business. It took a collective effort from all Defendants to achieve the level of deception possible to achieve this harm. Therefore, Plaintiffs' injuries would not have been sustained "but for" the participation of state level officials, including the Georgia Defendants.

30.    It is certainly foreseeable that the Georgia Defendants' acts in furtherance of the pattern of racketeering would result in loss of property to Plaintiffs and harm to their businesses by defrauding them into making donations through dissemination of false information and narratives. It is certainly foreseeable that promoting prolonged economic lockdowns for COVID-19 would result in harm to the small business community and would harm Plaintiffs' businesses. Again, it took a collective effort from Defendants to convince the public to support lockdowns, so the effort would not have been successful if not for participation of the state level officials such as the Georgia Defendants.

31.    It is also foreseeable that the severe and pervasive violations of federal civil rights elections laws would open the door to fraudulent ballots being cast and the inability to perform a proper audit, thus resulting in deprivations of civil rights described in the Complaint. Again, it took a collective effort from Defendants to circumvent the federal election integrity laws in each state to the extent that Plaintiffs suffered the mental anguish they have suffered in knowing they can no longer trust the outcome of federal elections in the United States and have no way of

knowing if their federal government was legitimately elected due to the lack of records available for a viable audit and lack of integrity in the process.

32.     Thus, the actions of the Georgia Defendants in furtherance of the pattern of racketeering and the conspiracy to deprive of civil rights were both the "but for" and proximate cause of Plaintiffs' injuries.  Accordingly, Plaintiffs' injuries are fairly traceable to Defendants for purposes of RICO and the civil rights statutes.  *See, e.g.*, *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 265 (1992) (common law tort standards of but for and proximate cause applicable to RICO claims); *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008) (in section 1983 action, "plaintiff must establish both causation-in-fact and proximate cause").

**WHEREFORE**, Plaintiffs pray the Court deny Defendants' Brian Kemp and Brad Raffensperger's motion to dismiss and grant all other relief to Plaintiffs to which they may be justly entitled.

Respectfully submitted this June 10, 2021.

/s/ *Paul M. Davis*
Paul M. Davis
Texas Bar Number 24078401
paul@fireduptxlawyer.com
PAUL M. DAVIS & ASSOCIATES, P.C.
5720 Frisco Square Blvd., # 2066
Frisco, TX 75034
Phone: 469-850-2930

ATTORNEY FOR PLAINTIFFS

<u>CERTIFICATE OF SERVICE</u>

I certify that I have served the foregoing motion on all counsel of record who have made appearances in this action to date via the court's ECF notification system on June 10, 2021.

/s/ *Paul M. Davis*
Paul M. Davis